[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11101
Non-Argument Calendar
_____

Agency No. A200-045-217


SERGIO EDUARDO RODRIGUES,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(February 26, 2019)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Sergio Eduardo Rodrigues seeks review of the Board of Immigration Appeals ("BIA") order dismissing his appeal from the denial of his application for withholding of removal and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  Upon review of the record and the parties' briefs, we dismiss the petition in part and deny it in part.

I.

Rodrigues, a native and citizen of Brazil, entered the United States on December 30, 2004 on a nonimmigrant tourist visa, which expired in August 2005. Rodrigues overstayed his visa and in 2011, he was served with a notice to appear charging that he was removable under 8 U.S.C. § 1227(a)(l)(B) for remaining longer than permitted.  Rodrigues conceded removability as charged and applied for withholding of removal and CAT relief.

According to Rodrigues's application and testimony before the immigration judge ("IJ"), Rodrigues was born and lived in Sao Paulo, Brazil.  He and his brother owned a clothing company there.  The company did very well for many years, but eventually began to fail.  Rodrigues borrowed extensively from banks and then from loan sharks in an effort to keep the family business afloat.  Two of the loan sharks, Alfredo Santos and Salvador, whose last name Rodrigues could

not recall, became hostile and threatened Rodrigues when he was unable to repay the money that he borrowed from them.

Rodrigues described three incidents that formed the basis for his application for withholding of removal: First, in 2003, Santos came to Rodrigues's house while armed and threatened to kill him if he did not repay the money he owed. Rodrigues testified that he did not call the police after this incident because Santos lived near his mother and Rodrigues feared for his family. Second, in 2004, Salvador sent two men to Rodrigues's store to confiscate merchandise in partial payment of Rodrigues's debt. The men threatened to kill him and his family if Rodrigues told anyone about the incident. Third, and last, several years after Rodrigues had moved to the United States, Santos told Rodrigues's mother and brother that if Rodrigues returned to Brazil he "would be in great trouble." Santos still lives near Rodrigues's mother and knows many of Rodrigues's family members; Rodrigues believed that Santos would soon find out if he returned to Sao Paulo. Rodrigues testified that he did not want to relocate to a different part of Brazil because the situation there is unstable and it would be difficult for him to start over in another city.

No one was physically harmed during any of the incidents Rodrigues described. Rodrigues's mother, brother, former wife, and two sons have continued to live in Sao Paulo without further incident.

3

The IJ found that Rodrigues was credible, but that even taken as true, the incidents he described did not warrant withholding of removal because they did not amount to past persecution, did not support an objectively reasonable fear of future persecution if he returned to Brazil, and did not show that it was more likely than not that he would be tortured if he returned to Brazil. The IJ therefore denied Rodrigues's application for withholding of removal and CAT relief.

Rodrigues appealed to the BIA, claiming that the IJ erred in finding that (1) the harm he had suffered was not based on a protected ground under the INA; (2) his testimony was not credible; and (3) he was not a member of any "particular social group" within the meaning of the INA.[1] The BIA agreed with the IJ's findings of fact and determination that Rodrigues's experiences did not amount to past persecution. The BIA further determined that Rodrigues had not shown that he was a member of a "particular social group" within the meaning of the statutory provision providing for withholding of removal. The BIA dismissed Rodrigues's appeal, and this timely petition for review followed.

---

[1] The IJ in fact made none of the objected-to findings; he pretermitted the question of whether Rodrigues belonged to a "particular social group" (one of the five protected grounds listed in INA § 241(b)(3)(A) and 8 U.S.C. § 1231(b)(3)(A)) and found that Rodrigues *was* credible. Nevertheless, because Rodrigues argued those issues before both the IJ and the BIA, we consider them here to the extent he has raised them in this Court.

4

II.

A.

We begin by addressing the threshold question of our jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 1244 (2006) ("[C]ourts, including this Court, have an independent obligation to determine whether subject-matter jurisdiction exists."). On petition for review of a final order of removal, our jurisdiction is limited to those claims for which "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006). To exhaust the available administrative remedies, an alien must present his claims to the BIA; thus, "we cannot consider issues that could have been, but were not properly raised in immigration proceedings and appealed to the BIA." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 867 (11th Cir. 2018). Due process claims that fall within the power of the BIA to remedy are subject to the exhaustion requirement. *Id.* at 868.

Rodrigues raises the following unexhausted claims: whether the IJ properly considered his application for CAT relief; whether his fear of torture on return to Brazil warranted CAT relief; whether he was denied a fair hearing in violation of his due process rights because the IJ was biased against him; and whether the IJ failed to give proper weight to evidence corroborating his objectively reasonable

5

fear of future persecution.  We lack jurisdiction to consider those issues because Rodrigues did not present them to the BIA, and so we dismiss Rodrigues's petition insofar as it raises those claims.

### B.

Rodrigues also contends that the immigration courts erred in denying his application for withholding of removal because he showed that, if he returned to Brazil, his creditors more likely than not would find him and kill him because of his membership in a "particular social group" protected under the INA.  We disagree.

On a petition for review of a final order of removal, we review only the BIA's decision, except to the extent that the BIA specifically adopted the IJ's opinion or reasoning.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  "A factual determination by the BIA that an alien is statutorily ineligible for asylum or withholding is reviewed under the substantial evidence test." *Id.* at 1283 (citation and punctuation omitted); *see Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).  Under this "highly deferential" test, we are required to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc).  The agency's "findings of fact are conclusive unless the record demonstrates that 'any reasonable adjudicator would

6

be compelled to conclude to the contrary.'"  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Under 8 U.S.C. § 1231, an alien shall not be removed to a country where his "life or freedom would be threatened" because of his "race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  An alien seeking withholding of removal under this provision must show either that he was persecuted in the past because of a protected ground, or that it is more likely than not that he will be persecuted for such reasons if removed.  *Tan v. US. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006); *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004).

Rodrigues failed to make the required showing.  As an initial matter, the three instances Rodrigues described, which involved only verbal threats and the confiscation of goods from Rodrigues's store, do not amount to past persecution. "[P]ersecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation."  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) (citation and punctuation omitted).  And evidence that is "consistent with acts of private violence" or "that merely shows that a person has been the victim of criminal activity" is not evidence of persecution based on a protected ground.  *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013).

7

Nor has Rodrigues shown that he will more likely than not be persecuted if he returns to Brazil. The fact that Salvador threatened to harm Rodrigues in 2004 if he reported Salvador's confiscation of goods from his store does not make it more likely than not that Salvador would harm Rodrigues if he returned to Brazil now. Likewise, Santos's verbal threats to Rodrigues and his family were never acted upon—before or after Rodrigues left Brazil—and do not establish a probability that Santos would follow through on his threats if Rodrigues returned to Brazil. The fact that Rodrigues suffered no physical harm during the year he remained in Sao Paulo after Santos threatened him, and that several of Rodrigues's family members have continued to live there for more than a decade without suffering any physical harm, undermines Rodrigues's belief that his creditors would do violence to him or his family if he returned to the area. Furthermore, although Rodrigues testified that it would be financially difficult for him to start over elsewhere in Brazil, he did not show that he could not avoid any threat from his creditors by doing so. *See Sanchez*, 392 F.3d at 437 (alien cannot show that future persecution in the country of removal is more likely than not if the threat could be avoided by relocating to a different area of the country).

Moreover, to succeed on an application for asylum or withholding of removal, an alien must show that the past or future mistreatment that he alleges was or would be "at least in part, motivated by a protected ground." *Rivera v. U.S.*

8

*Att'y Gen.*, 487 F.3d 815, 821 (11th Cir. 2007) (citation and punctuation omitted). Rodrigues alleges that his life is at risk because of his membership in a "particular social group"; namely, loan-shark victims whom "the authorities will or do not protect." This group does not qualify as a "particular social group" as that term is used in § 1231.

"'A particular social group' refers to persons who share a common, immutable characteristic 'that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Rodriguez*, 735 F.3d at 1310 (quoting *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1193, 1196 (11th Cir. 2006)). To qualify under the statute, a group "must also be 'defined with particularity' and 'socially distinct within the society in question.'" *Gonzalez v. U.S. Atty. Gen.*, 820 F.3d 399, 404 (11th Cir. 2016) (quoting *Matter of M–E–V–G–*, 26 I. & N. Dec. 227, 237 (BIA 2014)).

Here, Rodrigues has not shown that his proposed social group has any members other than himself, or that the purported group members have anything more in common than the risk that they may be harmed by their creditors and that the police may not help them. The BIA correctly noted that this definition is circular, and as we have held before, "[t]he risk of persecution alone does not create a particular social group within the meaning of the INA." *Castillo-Arias*,

9

446 F.3d at 1198. Rodrigues has not shown that his "life or freedom would be threatened" in Brazil because of his "race, religion, nationality, membership in a particular social group, or political opinion"; accordingly, we deny his petition for review to the extent that he challenges the denial of his application for withholding of removal. 8 U.S.C. § 1231(b)(3)(A).

III.

Based on the record before us, the BIA's denial of withholding of removal is supported by substantial evidence. We therefore affirm the BIA's decision, deny the petition in part, and dismiss it in part.

**PETITION DENIED IN PART AND DISMISSED IN PART.**